# IN THE COURT OF APPEALS OF IOWA

No. 23-2127
Filed April 23, 2025

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**SCOTT NEIL BROWN,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Buchanan County, Joel A. Dalrymple, Judge.

Scott Brown appeals his convictions for sexual abuse in the second degree. **AFFIRMED.**

Benjamin D. Bergmann and Alexander Smith of Parrish Kruidenier, L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered without oral argument by Greer, P.J., Chicchelly, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

Scott Brown appeals his convictions for five counts of sexual abuse in the second degree, challenging the introduction of evidence, improper sentencing considerations, and the sufficiency of the evidence supporting his convictions. Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

S.R. often stayed overnight at her great-grandmother's house.  S.R.'s uncle, Scott Brown, lived in the same house along with his wife and children.  In early 2023, then ten-year-old S.R. informed her mother Brown had been sexually abusing her since she was seven years old.  S.R. sent screenshots of her and Brown's text messages, in which Brown threatened to make her mother "disappear" and instructed her to delete the messages.  S.R.'s mother reported the abuse to police.

Officer Andrew Isley, the investigating officer, found the same messages S.R. sent to her mother on Brown's phone.  He scheduled a Child Protection Center (CPC) interview with S.R.  A forensic interviewer asked S.R. questions for about ninety minutes, in which she recalled specific instances of Brown's abuse. Officer Isley observed the interview, and the CPC recorded it.

Upon hearing the allegations surrounding Brown, another family member asked S.R.'s cousin, E.B., whether Brown had acted inappropriately towards them. E.B. remembered a time when Brown asked for a "dick massage" in exchange for purchasing a pair of boots E.B. wanted.  E.B.'s father showed a video recording of this conversation to Officer Isley.

The State filed a trial information charging Brown with five counts of second-degree sexual abuse and one count of enticing a child.[1] At trial, S.R. testified to most of the abuse mentioned in her CPC interview. Throughout cross-examination, Brown refreshed S.R.'s recollection outside the presence of the jury using clips from the CPC interview. In response, the State moved to enter the entire video of the CPC interview into evidence during direct examination of the forensic interviewer. Brown objected to the interview's introduction under the completeness rule and argued the residual hearsay exception did not apply. The district court found the entire interview to be admissible and allowed the State to play the entire video in front of the jury.

At both the close of the State's and defense's case-in-chief, Brown moved for judgment of acquittal. The district court denied both motions, and the jury found Brown guilty of five counts of sexual abuse in the second degree and not guilty of enticing a minor. The district court entered judgment and sentence. Brown appeals.

## II.      Introduction of the CPC Interview

Brown raises three challenges to the admission of the CPC interview. We review the district court's ruling on hearsay objections for corrections of errors at law. *State v. Flores*, 2 N.W.3d 287, 292 (Iowa 2024)*.* We review rulings implicating interpretations of a rule of evidence for correction of errors at law. *Id.* We review allowing evidence under the rule of completeness for an abuse of discretion. *Id.*

---

[1] The first five counts named S.R. as the victim, and the sixth count named E.B. as the victim.

### A.    Hearsay

Brown argues the district court erred by allowing hearsay testimony in the form of the CPC interview.  The district court ruled the CPC interview admissible under an exception to the hearsay rule.  *See* Iowa R. Evid. 5.807 (granting an exception for a statement supported by guarantees of trustworthiness and is more probative on the point for which it is offered than any other evidence).  Brown contests the CPC interview was unnecessary because S.R. testified at trial.

The admission of hearsay under Iowa Rule of Evidence 5.807 requires the statement to be trustworthy, material, serve the interests of justice, and the introducing party provide notice.  *State v. Skahill*, 966 N.W.2d 1, 10 (Iowa 2021).  "These are not factors to be weighed; all five requirements must be satisfied."  *Id.* For hearsay evidence to be necessary, it must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Iowa R. Evid. 5.807(a)(2); *Skahill*, 966 N.W.2d at 10.  Our supreme court has held when the same evidence is available through in-court testimony, the necessity requirement generally cannot be met under the residual exception.  *Skahill*, 966 N.W.2d at 13–14.  Unlike in *State v. Rojas*, 524 N.W.2d 659, 663 (Iowa 1994), and *State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa Ct. App. 2011), where testifying victims either recanted accusations or failed to recall abuse, S.R. testified in detail about Brown's abuse.  Because S.R.'s CPC interview was not more probative than her live testimony, it does not satisfy the necessity requirement of rule 5.807, and the residual exception does not apply.  *See Skahill*, 966 N.W.2d at 15.

### B.    Completeness

Brown also contends the district court erred by allowing the CPC interview into evidence under the common law doctrine of completeness.  The district court, citing *State v. Austin*, 585 N.W.2d 241, 244 (Iowa 1998), found Brown opened the door to the interview by choosing select portions of the interview to refresh S.R.'s recollection on cross.  Brown argues because he did not play any excerpts of the video in the presence of the jury, he did not trigger the rule of completeness.

Rule 5.106(a) codifies the completeness doctrine, which provides "[i]f a party introduces all or part of [a] . . . recorded statement, an adverse party may require the introduction . . . of any other part [of the] recorded statement that in fairness ought to be considered at the same time."  Our supreme court has characterized rule 5.106 "as posing an open-the-door concept."  *Flores*, 2 N.W.3d at 293.  The rule allows a party to introduce more evidence to "complete" partial evidence introduced by the adverse party.  *See id.*  Brown cites *Flores*, contending the supreme court stated the prosecution did not trigger rule 5.106 because the State did not play any excerpts of the video, and instead showed the witness a summary to refresh her recollection.  *See id.*  Brown misstates *Flores*, in which the court held:

> Either the prosecution or the defense can trigger the rule by offering part of a statement in a way that is misleading absent context provided by the rest of the statement, with the opposing party then able to request the introduction of the rest of the recording at the court's discretion.

*Id.* at 294.  Brown triggered the rule by refreshing S.R.'s recollection with clips of the CPC interview.

### C.     Limiting the Introduction to Select Portions of the Video

Finally, Brown maintains only select clips of the CPC interview should have been played to clear up any misleading effect to the jury.  The district court, in its discretion, determined the entire interview was necessary for the jury to make their credibility determination.  Brown claims *Flores* requires parties seeking to introduce forensic interview videos under rule 5.106 to limit them to sections necessary for context, fairness, or to clear up misleading impressions.  *See id.* at 295.

In *Flores*, the court quoted the Kentucky Supreme Court and agreed with their *guidance on* the practice of limiting forensic interview videos to necessary portions.  *Id.* at 295–96.  But the court ultimately upheld the district court's decision to play the entire video for assessing credibility and to "provid[e] a complete picture of the statements made in the interview that were challenged during cross-examination."  *Id.* at 296.  As in *Flores*, here the district court instructed the jury about the limits of the CPC interview: "Because the witness did not make the earlier statements under oath, you may use them only to help you decide if you believe the witness."  Brown's specific cross-examination could have implied S.R.'s story was inconsistent, so the State introduced the rest of the video to give the full picture.  Because of the district court's limiting instruction on the CPC interview, it acted within its discretion to allow the entire video.  The CPC interview was admissible under rule 5.106 even if the State did not strictly adhere to the guidance our supreme court offered in *Flores*.  We find no abuse of the court's discretion on this issue.

### III.  Considering Unproven Offenses

Brown argues the district court's use of the word "witnesses" shows the court considered the unproven offense of enticing a child at sentencing.  We review claims of improper sentencing considerations for abuse of discretion.  *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).  A district court's sentencing decision within statutory limits "is cloaked with a strong presumption in its favor."  *Id.*  "An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable."  *Id.*

We will not draw inferences of improper sentencing considerations; they must be apparent from the record.  *See id.* at 725–26.  Relying on *State v. Jose*, 636 N.W.2d 38, 42 (Iowa 2001), and its precedent cases, Brown improperly construes the district court's remarks as a specific reference to an unproven charge.  For example, in *State v. Messer*, the sentencing court stated, "it was taking into consideration the fact that there were two other charges that were not prosecuted . . . ."  306 N.W.2d 731, 732 (Iowa 1981).  In contrast, here, the district court stated:

> As I've indicated earlier as it relates to the post-trial motions, the court's findings regarding the credibility of the complaining witness, frankly, the witnesses, that as it only relates to the complaining witness for counts I through V, the child of that age should not know what a blow job is.  A child of that age should not know what a hand job is.

The district court expressly qualified its statement "*as it only relates to the complaining witness for counts I through V.*" (emphasis added).  The court's statement omits any reference to count VI and only relies on counts the jury found

Brown guilty of. Further statements by the district court, referring to oral sex, Brown's threat to make S.R.'s parents "disappear," and the "pervasive" sex abuse only allude to S.R.

Viewing the statement in context, we find the court did not rely on the unproven offense of enticing a child when sentencing. We find no abuse of the court's discretion.

## IV. Sufficiency of the Evidence

Brown also challenges the sufficiency of the evidence supporting his convictions. We review his claim for correction of errors at law. *Neitzel*, 801 N.W.2d at 624. "If a verdict is supported by substantial evidence, we will uphold a finding of guilt." *Id.* Evidence is substantial if it can convince a rational fact finder of the defendant's guilt beyond a reasonable doubt. *Id.* To determine whether the jury's verdict is supported by substantial evidence, we "view the evidence in the light most favorable to the State." *Id.*

Brown's sexual abuse charges arose from S.R.'s statements about various incidents of forced oral sex and manual stimulation. The jury was instructed the State must prove the following elements of sexual abuse in the second degree:

> 1. On or between [various dates], the defendant performed a sex act with S.R. . . . .
> 2. The sex act was performed while S.R. was under the age of 12 years.

*See* Iowa Code § 709.3 (2023) (defining second-degree sexual abuse). The jury found the State proved both elements for each count and found Brown guilty as charged.

On appeal, Brown contests the sufficiency of the evidence with respect to the first element. Brown challenges S.R.'s credibility and describes her testimony as inconsistent. Brown asserts several times S.R. stated one thing during her CPC interview and another during trial. Specifically, he points to S.R.'s statements about a passerby witnessing Brown abusing her, abuse that occurred when she was missing teeth, and whether Brown had his shirt off during a specific instance of abuse. Upon our detailed review of the transcript and the interview, however, we find S.R.'s accounts to be generally consistent and the contradictions alleged by Brown are unpersuasive.

Our supreme court has found the testimony of a victim alone constitutes substantial evidence in sexual-abuse cases. *See State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022); *State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021). Brown asks us to follow *State v. Smith*, where inconsistent testimony resulted in the court finding insufficient credible evidence for a rational jury to find the defendant guilty. 508 N.W.2d 101, 105 (Iowa Ct. App. 1993). But our supreme court has criticized *Smith* as "an outlier," *Mathis*, 971 N.W.2d at 518, and "inconsistent with our appellate standard," *State v. Trane*, 984 N.W.2d 429, 437 (Iowa 2023).

S.R. consistently testified to the material elements of sex abuses—the repeated occurrence of oral sex and manual stimulation with Brown. In addition, some of S.R.'s alleged inconsistent statements are consistent. For example, at trial both prosecution and defense counsel asked S.R. whether Brown abused her after losing her teeth, which she denied. Brown asserts this contradicts her CPC interview, where she stated sex abuse occurred after losing her teeth. A closer viewing of the CPC interview reveals S.R. said the abuse occurred after her teeth

grew back. This version of events is bolstered by a photograph of S.R. missing said teeth in 2019 when she was six years old, three years before she stated this instance of sex abuse took place.

Minor inconsistencies are common in sexual abuse cases, but this is not enough to challenge sufficiency of the evidence. *See Donahue*, 957 N.W.2d at 11. Without a "fatal contradiction" in the victim's testimony, the jury only needs to consider the contradictions in reaching their verdict. *See Mathis*, 971 N.W.2d at 518–19; *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." (alteration in original) (citation omitted)).

Both S.R.'s testimony and the text messages sent by Brown corroborate the sex abuse. Viewing the record in the light most favorable to the State, substantial evidence supports Brown's convictions. We affirm.

**AFFIRMED.**